UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

JESUS PENALOZA-MEJIA,

                    Defendant.

NO. CR-10-2116-EFS

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT**

A pretrial conference occurred on January 27, 2011, in Yakima, Washington.  Defendant Jesus Penaloza-Mejia was present, represented by Alison Guernsey.  Gregory M. Shogren appeared on the United States Attorney's Office's (USAO) behalf.  Before the Court was Defendant's Motion to Dismiss Indictment (ECF No. 27).  After reviewing the submitted materials and relevant authority and hearing argument, the Court was fully informed and granted Mr. Penaloza-Mejia's motion.  This Order memorializes and supplements the Court's oral rulings.

## I. Background

On February 1, 2007, the Department of Homeland Security (DHS) issued a Notice to Appear for Mr. Penaloza-Mejia, alleging that he was illegally present in the United States after having entered without

ORDER * 1

1  inspection, in violation of 8 U.S.C. § 1182(a)(6)(A)(i).  (ECF No. 28,

2  Ex. A.)  That same day, Mr. Penaloza-Mejia signed the certificate of

3  service and requested an immediate hearing before an Immigration Judge

4  (IJ).  *Id*.  No hearing was ever held.  Instead, on February 5, 2007, and

5  without the benefit of counsel, Mr. Penaloza-Mejia signed a stipulated

6  order of removal, agreeing to removal, and waiving his rights to a

7  hearing before an IJ and to appeal the removal.  *Id*. Ex. B.  Without

8  having appeared before an IJ and based on this stipulation, Mr. Penaloza-

9  Mejia was ordered removed from the United States on February 7, 2007, and

10 was subsequently removed on February 9, 2007.

11      On November 2, 2010, Mr. Penaloza-Mejia was indicted in this Court

12 on one count of being an alien in the United States following

13 deportation, in violation of 8 U.S.C. § 1326.  (ECF No. 1.)  The

14 Indictment is based on the February 9, 2007 removal date.  *Id*.

15                          **II. Analysis**

16      Under 8 U.S.C. § 1326(a), an alien is criminally liable if he is

17 found in the United States after he "has been denied admission, excluded,

18 deported, or removed," without consent of the Attorney General or other

19 advance consent.  "In a criminal prosecution under § 1326, the Due

20 Process Clause of the Fifth Amendment requires a meaningful opportunity

21 for judicial review of the underlying deportation."  *United States v.*

22 *Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *overruled on other*

23 *grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002)

24 (en banc).  If the district court finds that "(1) [the defendant's] due

25 process rights were violated by defects in his underlying deportation

26 proceeding, and (2) he suffered prejudice as a result of the defects,"

   the deportation stemming from the defective proceedings may not be used

ORDER * 2

to prove the defendant violated § 1326. *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) (quoting *United States v. Palares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004)); *see generally United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

Mr. Penaloza-Mejia moves the Court to dismiss the § 1326 charge against him because the deportation relied upon in the Indictment violated his due process rights. Mr. Penaloza-Mejia argues first, that he was denied due process during the 2007 deportation proceedings because the IJ did not make a pre-removal finding that he voluntarily, knowingly, and intelligently waived his right to a hearing; and second, that he was prejudiced by this due-process denial because it prevented him from seeking voluntary departure. The USAO does not dispute that the underlying deportation proceedings were defective. But it argues that Mr. Penaloza-Mejia cannot show prejudice because voluntary departure was not a plausible form of relief: his Washington conviction for Third Degree Child Molestation in violation of RCW 9A.44.089 made him ineligible for voluntary departure. The Court addresses Mr. Penaloza-Mejia's arguments below.

## A. Defective Deportation Proceeding

Mr. Penaloza-Mejia argues that his 2007 deportation, which was executed pursuant to 8 U.S.C. § 1229a(d)'s stipulated removal process, was defective because he did not validly waive his right to a prompt hearing before an IJ. The USAO concedes that the underlying removal process was defective; however, the Court nevertheless reaches the merits and finds that Mr. Penaloza-Mejia suffered a due process violation.

Aliens in the United States are guaranteed procedural due process rights, which include the opportunity to be heard concerning their status

ORDER * 3

and possible removal. *Sung v. McGrath*, 339, U.S. 33 (1950). An alien's due process rights may, however, be validly waived as long as the waiver is "both 'considered and intelligent.'" *Ramos*, 622 U.S. at 680 (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)). "The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceeding," and a court reviewing the immigration record must "'indulge every reasonable presumption against waiver.'" *Id.* (quoting *United States v. Lopez-Vasquez*, 1 F.3d 751, 753 (9th Cir. 1993)).

Although most authority on due process waiver examines an alien's rights to counsel and appeal, courts have found a due process violation where the hearing was deficient. *See, e.g., Ramos*, 623 F.3d at 681-82 (holding defendant's underlying removal order procedurally defective because he "lacked the benefit of counsel or a hearing before the IJ"); *United States v. Crisostomo-Rios*, No. CR-10-2060-FVS, 2010 WL 3433906, at *2 (E.D. Wash. Aug. 31, 2010) (finding underlying deportation proceedings deficient based on IJ's failure to make a finding that the defendant had voluntarily, knowingly, and intelligently waived his right to a hearing); *United States v. Gomez-Hernandez*, No. CR-08-6005-FVS, 2008 WL 2096876, at *4 (E.D. Wash. May 16, 2008) (finding the IJ's "failure to obtain a voluntary, knowing, and intelligent waiver of the Defendant's right to a hearing" violated due process).

Here, Mr. Penaloza-Mejia was deported without a hearing, based on his signing of a stipulation for order of removal pursuant to 8 U.S.C. § 1229a(d) and its implementing regulation, 8 C.F.R. § 1003.25. Under 8 C.F.R. § 1003.25, an IJ may, after review of the charging document, written stipulation, and supporting documents, enter an order of

ORDER * 4

deportation without a hearing and in the absence of the parties.  8 C.F.R. § 1003.25.  "If the alien is unrepresented, the [IJ] must determine that the alien's waiver is voluntary, knowing, and intelligent." *Id*.

Although an IJ may find a waiver to be voluntary, knowing, and intelligent on the record, neither the IJ's order nor the documentary record reflected such a waiver in this case.  Here, Mr. Penaloza-Mejia requested a prompt hearing before an IJ.  (ECF No. 28, Ex. A.)  After four days in custody and without counsel present, Mr. Penaloza-Mejia signed a stipulated request for order of removal, thereby waiving his "right to a personal hearing before an [IJ]." (ECF No. 28, Ex. B.)  Mr. Penaloza-Mejia signed the stipulation "because the immigration officer stated that [he] could be deported immediately if [he] signed the stipulation." *Id*. Ex. E.  The record lacks any evidence that the IJ engaged in any fact-finding efforts to determine whether Mr. Penaloza-Mejia's waiver of his right to a hearing was knowing, voluntary, and intelligent. *See* ECF No. 28, Ex. C.  And without counsel present, it is wholly unclear whether Mr. Penaloza-Mejia read or understood the consequences of signing the form. *See United States v. Galicia-Gonzalez*, 997 F.2d 602, 603 (9th Cir. 1993) (finding no due-process violation when an alien's immigration counsel signed the stipulated order of removal and submitted a declaration indicating that "she fully explained the contents of the agreement to [the defendant] and he entered it with full knowledge").  In these circumstances, Mr. Penaloza-Mejia's decision to forego a hearing was not a valid waiver of his right to a hearing; thus, the 2007 deportation proceedings deprived him of due process of law.

Mr. Penaloza-Mejia also argues he was denied due process because, without a hearing, he was not advised that he may be eligible for voluntary departure. The Court finds that his due process rights were so violated. *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004) ("The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is a denial of due process that invalidates the underlying deportation proceeding.") (internal quotation marks omitted); *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (finding due process rights violated in underlying deportation hearing when IJ failed to inform the defendant he was eligible for voluntary departure in lieu of removal); *Arrieta*, 224 F.3d at 1079 (finding a due process violation when the IJ failed to inform defendant of his eligibility for relief from deportation); *Moran-Enriques v. INS*, 884 F.2d 420, 422-23 (9th Cir. 1989) (recognizing that "the IJ must advise the alien of this possibility and give him the opportunity to develop the issue" where the record contains an inference that the petitioner is eligible for relief from deportation).

### B. Prejudice

Mr. Penaloza-Mejia argues he was prejudiced by the deficient deportation proceedings because he was not advised that he may be eligible for voluntary departure. The USAO counters that Mr. Penaloza-Mejia, as an aggravated felon, was not eligible for voluntary departure and thus, was not prejudiced by the lack of a hearing.

To successfully challenge a deportation underlying a § 1326 charge based on a defective hearing, a defendant must also demonstrate "he suffered prejudice as a result of the defects." *Zarate-Martinez*, 133 F.3d at 1197; *United States v. Proa-Tovar*, 975 F.2d 592, 594 (9th Cir.

ORDER * 6

1992).  To demonstrate prejudice, the defendant need only establish he had a "plausible" basis for relief from deportation. *See Ramos,* 623 F.3d at 684 (quoting *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003)); *Arrieta*, 224 F.3d at 1079.  In other words, the defendant need only prove that, but for the deportation proceeding defects, it is plausible the outcome of his deportation hearing would have been different.  The defendant need not prove he would have actually avoided deportation. *United States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996).

Mr. Penaloza-Mejia argues he was prejudiced by the deportation proceedings because he was not advised that he may be eligible for relief from removal by voluntary departure. *See* 8 U.S.C. § 1229c.  Voluntary departure allows an alien to avoid the formal removal process and voluntarily depart at his own expense and is available to all aliens except aggravated felons and terrorists. *Id*. § 1229c(a)(1) & § 1229c(b). As used in 8 U.S.C. § 1229c(b), "aggravated felony" means "murder, rape, or sexual abuse of a minor."  *Id*. § 1101(a)(43)(a).

Here, the parties disagree as to whether Mr. Penaloza-Mejia's 2007 conviction for Third Degree Child Molestation, in violation of RCW 9A.44.089, is a conviction for "sexual abuse of a minor" and therefore is an aggravated felony.  To determine whether a particular prior conviction constitutes an aggravated felony, the Court applies the categorical approach: it looks only to the statutory definition of the prior convicted offense. *See Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1012-13 (9th Cir. 2009) (citing *Taylor v. United States,* 495 U.S. 575, 600-02 (1990) and *Shepard v. United States*, 544 U.S. 13, 20-21 (2005)).

The statute of conviction, Third Degree Child Molestation under RCW 9A.44.089, criminalizes the conduct of a person who

> has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim.

RCW 9A.44.089. For purposes of this statute, "sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." *Id*. 9A.44.010. Thus, Third Degree Child Molestation has the following elements: (1) having or knowingly causing a child under the age of eighteen to have; (2) sexual contact; (3) with a child ages fourteen to sixteen; and (4) the defendant must be (a) at least forty-eight months older than and (b) not married to the child.

The Ninth Circuit recognizes two different generic federal definitions of "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A). *Pelayo-Garcia*, 589 F.3d at 1013. The first contains three elements: "(1) sexual conduct; (2) with a minor; (3) that constitutes abuse." *United States v. Castro*, 607 F.3d 566, 568 (9th Cir. 2010) (citing *United States v. Medina-Villa*, 567 F.3d 507, 513 (9th Cir. 2009)). A statute of conviction containing the third element – abuse – expressly prohibits conduct that causes "'physical or psychological harm' in light of the age of the victim in question;" sexual conduct with younger children is per se abusive. *See Medina-Villa*, 567 F.3d at 513 (citing *United States v. Baron-Medina*, 187 F.3d 1144 (9th Cir. 1999)).

RCW 9A.44.089 is categorically broader than this first generic definition. Although it contains two elements of the generic crime – sexual conduct with a minor – it criminalizes conduct that is not

ORDER * 8

necessarily abusive. RCW 9A.44.089 does not require physical or psychological abuse; nor does it address conduct that is per se abusive. *See Castro*, 607 F.3d at 569 (recognizing that conduct with a fourteen to fifteen-year-old is not per se abusive); *Pelayo-Garcia*, 589 F.3d at 15-16 (concluding that sexual conduct with fifteen-year-old is not per se abusive); *cf. Baron-Medina*, 187 F.3d at 1147 (recognizing that sexual conduct with a minor under fourteen constitutes abuse).

The second generic definition of sexual abuse of a minor has four elements: "(1) a mens rea level of knowingly (as to engaging in the act); (2) a sexual act; (3) with a minor between the ages of 12 and 16; and (4) an age difference of at least four years between the defendant and the minor." *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1152 (9th Cir. 2008) (parenthetical added). A "sexual act" within this section is defined as: contact between the genitals or between the genitals or the anus, contact between the mouth and the genitals or anus, penetration of the genitals or anus with intent to abuse, humiliate, harass, degrade, or arouse; or intentional skin-to-skin touching of the genitals of one under sixteen. 18 U.S.C. § 2246(2).

RCW 9A.44.089 is also categorically broader than the second generic definition of sexual abuse of a minor. Although it contains three of the four generic elements, RCW 9A.44.089's definition of "sexual act" is broader than the federal definition. The generic federal definition requires, at a minimum, skin-to-skin touching. *See Castro*, 607 F.3d at 570. On the other hand, RCW 9A.44.089 criminalizes contact to a minor's genitalia through the clothing. *See, e.g., State v. Soonalole*, 99 Wn. App. 207, 214 (2000) (affirming conviction for Third Degree Child Molestation when the defendant fondled the victim's breasts and rubbed

ORDER * 9

her thighs over her clothes). Thus, because a defendant could be convicted under RCW 9A.44.089 without engaging in a "sexual act" as federally defined, the Court finds that RCW 9A.44.089 is categorically broader. Thus, Mr. Penaloza-Mejia's Washington conviction for Third Degree Child Molestation under RCW 9A.44.089 does not qualify as a "sexual abuse of a minor" conviction.

Nor does Mr. Penaloza-Mejia's conviction qualify as an aggravated felony under the modified categorical approach. When it is not clear from the statutory definition of the prior offense whether it constitutes an aggravated felony, the Court may employ a modified categorical approach and look beyond the language of the statute to a narrow set of records included in the alien's record of conviction. *Pelayo-Garcia*, 589 F.3d at 1013 (quoting *Quintero-Salazar v. Keisler*, 506 F.3d 688, 692 (9th Cir. 2007)). This narrow set of records includes the alien/defendant's charging documents, signed plea agreement, and judgment. *See Shepard*, 544 U.S. at 20-21 (2005). But "the modified categorical approach does not apply 'when the crime of conviction is missing an element of the generic crime altogether, because under such circumstances [the Court] can never find that a jury was actually required to find all the elements of the generic crime." *Estrada-Espinoza*, 546 F.3d at 1159 (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007) (alterations omitted)).

Here, the Court cannot undertake the modified categorical approach because RCW 9A.44.089 is missing an element when compared to both of the federal definitions of "sexual abuse of a minor." As discussed, the Washington statute is missing the element of "abuse" under *Medina-Villa*'s first generic definition, and the element of "sexual act" under *Estrada-*

ORDER * 10

*Espinoza's* second generic definition.    The Court concludes that the modified categorical approach is unavailable because the Court cannot find that "a jury was actually required to finding all the elements of" the generic crime.    *Navarro-Lopez*, 503 F.3d at 1073 (citing *Li v. Ashcroft*, 389 F.3d 892, 899-901 (9th Cir. 2004)).    And even if the Court were to undertake a modified categorical approach, the record contains only three documents of conviction (Defendant's statement on plea of guilty, an amended information, and a felony judgment and sentence), none of which establishes the age of the victim or the nature of the sexual contact with the minor.

Accordingly, the Court concludes that Mr. Penaloza-Mejia's Third Degree Child Molestation conviction, in violation of RCW 9A.44.089, does not qualify under either generic federal definition of "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A).    As such, Mr. Penaloza-Mejia was eligible for voluntary departure and, because he was deprived of a hearing, was not advised of this opportunity.    Had Mr. Penaloza-Mejia been advised of such eligibility, it is plausible he would have taken advantage of the opportunity to voluntarily depart and not been involuntarily removed.    (ECF No. 28, Ex. E.)    Thus, Mr. Penaloza-Mejia was prejudiced by his lack of hearing.    *See Ortiz-Lopez*, 385 F.3d 1202 (9th Cir. 2004).[1]

---

[1]    Although § 1326(d) requires that an alien demonstrate that he has exhausted administrative remedies to collaterally attack the underlying deportation order, exhaustion is not required when the waiver of the right to appeal did not comport with due process.    *See, e.g., Ramos*, 623 F.3d at 680.

ORDER * 11

### III. Conclusion

Because Mr. Penaloza-Mejia has demonstrated his February 2007 deportation proceeding was defective, i.e. violated the due process clause, and that he was prejudiced by those defects, his 2007 deportation may not form the basis for a § 1326 conviction. Accordingly, because Mr. Penaloza-Mejia's § 1326 charge is premised upon said deportation, the charge against him is dismissed.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Dismiss Indictment **(ECF No. 27)** is **GRANTED.**

2. All hearing dates are **STRICKEN**.

3. The U.S. Marshals Service shall immediately **RELEASE** Defendant from U.S. Marshal custody.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel, the U.S. Probation Office, U.S. Marshal, and the Jury Administrator.

**DATED** this __27th__ day of January 2011.


                              S/ Edward F. Shea
                           _____
                              EDWARD F. SHEA
                        United States District Judge

Q:\Criminal\2010\2116.dismiss.1326.indict.wpd

ORDER * 12